SAMUEL V. SMILEY and wife MARY R. SMILEY v. J. B. PEARCE and wife METTIE PEARCE, B. F. MONTAGUE and J. W. LEE.

### *Exceptions—Trust—Evidence—Equity.*

1. A general exception to the admission of testimony, unless the whole of it is incompetent, will not be considered.   The objectionable portion must be specifically pointed out.

2. In an action to set up a trust in lands, declarations and admissions of the party charged, accompanying and contemporaneous with the transfer of the title to which the trust is alleged to be annexed, distinctly recognizing the trust, are sufficient to authorize the Court to enforce the equity.   It is otherwise when the admissions are in respect to a trust *antecedently* created.

(*Barnhardt* v. *Smith*, 86 N. C., 479, and *Shields* v. *Whitaker*, 82 N. C., 522, cited and approved).

CIVIL ACTION, tried before *Shepherd, Judge,* at Spring Term, 1887, of JOHNSTON Superior Court.

The plaintiffs alleged, that about the year 1883 or 1884, the defendant J. B. Pearce and his father J. W. Pearce (who was the father also of the plaintiff Mary R. Smiley) purchased a tract of land jointly, but the conveyance was made to the son, upon the express trust that he should hold the title thereto for the joint and equal use of himself and his sister, the said Mary ; that in pursuance of this understanding, and to avoid some family complications, Pearce conveyed the

legal title to Thos. R. Purnell, who took the same with full knowledge of the trust; that subsequently Purnell, under the direction of the defendant J. B. Pearce, executed a deed to the plaintiff Mary for 110 acres of the land, that amount having been agreed upon as being equal in value to the remaining 119 acres of the tract; that at the same time, at the suggestion of the said J. B. Pearce, and upon his representation that it was necessary, in order to avoid the family embarrassments referred to before, she executed to him her note for $1,000 and a mortgage on the 110 acres to secure the same, with an assurance on his part that he would give them up to her husband; that said note and mortgage were wholly without consideration; that none of the deeds had been registered; that before the delivery of the deed from Purnell to the plaintiff Mary, J. B. Pearce, by false and fraudulent means and representations procured Purnell to surrender the deed made by him to the said Purnell, as well as the deed made by the latter to the plaintiff Mary, and the mortgage and note up to him.

The plaintiffs further alleged, that J. B. Pearce mortgaged the lands to the defendant Montague, and also assigned to him the note and mortgage made by the plaintiff Mary, who had notice of the said Mary's rights; that the money secured by this last mortgage not being paid, the lands were sold and purchased by the defendant Lee—the father-in-law of Montague—with notice.

The prayer was that the defendant Pearce convey the legal title to the 110 acres to the plaintiff Mary; for possession; that the mortgage and note executed by the plaintiff Mary be delivered up for cancellation, &c.

The defendants answered severally, denying the material averments—the defendants Montague and Lee alleging that they had purchased in good faith and without notice.

Numerous issues, embracing the disputed facts, were submitted to the jury, and were all found in favor of the plain-

tiffs.   Thereupon the Court rendered judgment for the plaintiffs, as prayed for by them, and the defendants appealed.

*Mr. C. M. Cook,* for the plaintiffs.
*Messrs. Chas. M. Busbee* and *A. Jones,* for the defendants.

·SMITH, C. J.    Exception 1.   The *feme* plaintiff testified to repeated conversations with her brother, the defendant Pearce, in which he said their father paid for the land, and that they were to share it equally, adding that he would go to Raleigh, sell to Purnell, and he would sell witness 110 acres, which seems to have been the division agreed upon; that witness afterwards, with Pearce, went to Raleigh, where Purnell sold half the land to witness, Pearce being present, and delivered a deed for the same to her.   But as it was without signature of his wife, the deed was handed back to him that she might also execute it; that subsequently Purnell delivered the deed to witness, perfected as required, and demanded his fee of $50.00; that witness paid him $5.00, and said : " I have not the residue of the money ; keep the deed until I can get it ;" and this was assented to, and the deed placed with one Stronach, to be surrendered when the debt was paid.

The exception is to the " foregoing " testimony, without pointing out the objectionable parts, and unless it is all inadmissible, the exception must be overruled, as decided in *Barnhardt* v. *Smith,* 86 N. C., 479.

But we do not see the sufficiency of·the reason given for the objection, nor any other reason for excluding the evidence.

It consists of a narrative of facts, which go to show a recognition of the attaching trust, and a step in the direction of giving it effect.   They are relevant and significant to uphold the denied trust, and are matters dehors the admissions of the existence of the trust.

Exception 2. The second exception is to the portion of the testimony of the same witness, which is in these words:

"When the deed was written, in Purnell's office, J. B. Pearce said, 'now give me a mortgage on the land for a thousand dollars, and I will give it to your wife, and you will not have to pay it;' I asked Purnell if that was all right; he said, ' yes, if he would give it up it was all right;' I gave the mortgage and note, and afterwards asked Purnell for them; he said Pearce had them, but he would get them for me; he asked me for some money; I said I had it, the $45.00, but wanted the note and mortgage before I paid it; this was before Purnell had conveyed the land."

No ground is assigned for the objection to this evidence, nor does any occur to us. It gives the details of what transpired in presence of the defendant Pearce, and previous to the acquirement by Lee of any interest in the premises.

The third exception, immediately following, rests upon no better basis of support, and all the evidence is pertinent as showing a recognized and an executed trust attaching in favor of the plaintiff.

Thus disposing of the rulings upon questions of evidence, we come now to consider the charge.

The defendants requested the Judge to charge that the declarations of the defendant J. B. Pearce to the plaintiffs were not evidence against the defendants Lee and Montague, of the existence of a parol trust in favor of Mary R. Smiley, and that taking all the evidence together, there was not sufficient evidence to be submitted to the jury as against Lee and Montague to establish the creation of a trust in favor of Mary R. Smiley, in 110 acres claimed at the time of the purchase of the land or the payment for the same, or the execution of the deed to J. B. Pearce by Whitley. His Honor declined to give the instructions as asked for and charged as follows:

That if the jury believe that J. W. Pearce, at the time of the purchase of the lands from Whitley, furnished the money

and had the land bought partly for his daughter, Mary R. Smiley, the circumstance of the execution of the deed to Purnell, and his deed to Mary R. Smiley, (if the jury shall believe that the same was executed without consideration,) may be taken into consideration by the jury upon the question of the existence of the parol trust, claimed by the plaintiff, and it was for them to say how the matter was.

Defendants excepted to the refusal to give the instruction asked and to the charge as given.

We are reluctant to entertain a complaint to the instructions refused when asked in such general terms, and the first portion of them is, in substance, to rule out evidence already passed on and admitted. This we do not deem it necessary further to consider in review. But the essential point presented is the alleged absence of evidence of matters outside of the declarations of the original trustee to attach a valid trust to his estate. This allegation is without the support of facts, and the charge could not rightfully have been given. The declarations held to be insufficient themselves to show a trust which a Court of equity will enforce, are such as are but admissions of a trust *antecedently* created, but do not include such as create and annex the trust to the legal estate.

These are not mere declarations, but acts which form and constitute the trust, and where the creation of them contemporary with the transfer of the legal estate is established, we do not see the need of proof of outside matters in corroboration.

But the declarations here proved are but admissions of the pre-existing trust, and do require such support, and in our opinion, it is furnished.[1]

What significance has the transfer to Purnell, and his transfer of 110 acres to the plaintiff, but as overt acts in furtherance of the trust and looking to its execution. The subject is carefully considered in *Shields* v. *Whitaker*, 82 N. C., 522, where it was held that an agreement for a compromise

where one is offered 200 acres of land in settlement, was a sufficient outside fact to meet the requirements of the rule. The charge given in substitution is entirely pertinent, and obnoxious to no just complaint.

There is no error. The judgment is affirmed.

No error. Affirmed.